United States District Court
Northern District of Ohio
Eastern Division

| | |
|---|---|
| Mary Washington and Peola Warren, | CASE        1:22-CV-01392 |
| individually and on behalf of all others similarly situated, | Class Action |
| Plaintiffs,        Judge | CHARLES E. FLEMING |
| v. | **Second amended class action complaint** |
| Nationstar Mortgage LLC d/b/a Mr. Cooper | |
| Defendant. | |

## [Jurisdiction, Venue, and Standing]

1.      As established by Defendant's Notice of Removal [ECF No. 1], The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, etc. provides this Court with jurisdiction.  There is diversity (*i.e.*, the citizenship of at least one Plaintiff (Ohio) is diverse from the citizenship of the Defendant (Delaware and Texas)), the amount in controversy (measured by what is in the removed Complaint) is over $5 million, and the class (alleged in the Complaint at removal) in the aggregate is at least 100 members—and, as detailed in Defendant's Notice of Removal, the other requirements of CAFA

(timely removal etc.) were and are met.  This federal jurisdiction continues even if the amount in controversy later drops below $5 million.

2.      This Court also has original federal jurisdiction under 12 U.S.C. § 2614 because Plaintiffs' suit asserts a federal law claim under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA")— which includes federal-question actions (see 28 U.S.C. § 1331).  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3.      Venue is proper in this District under 28 U.S.C. §1391 in part because Defendant does business in this District and otherwise is subject to personal jurisdiction here.  Also, the causes-of-action as to the named Plaintiffs and the classes are properly litigated here, and venue is otherwise proper here as to them.  Venue is also proper here as this action was properly removed from the Court of Common Pleas, Cuyahoga County, Ohio, which removal automatically satisfies federal venue requirements (*i.e.*, when an action is removed from state court, venue is automatically proper in the District where the state action was pending).

4.      Standing: As shown below, Plaintiffs and the classes have been injured by having excessive monies improperly deducted from their escrow accounts by Defendant, or otherwise being overcharged Defendant; Defendant caused that injury; and the injury can be redressed by a judicial decision. And because the named Plaintiffs have standing to recover in this case, the

2

proposed classes do too, and the named Plaintiffs have standing to represent the members of the proposed classes to recover for their injuries, in this case, on a class-wide basis (including through class certification under Rule 23 and the class action device), RESPA specifically addresses class actions, nationwide classes are routinely certified for RESPA and other claims, and Rule 23 and other legal principles give the named Plaintiffs standing to represent the classes here. Other allegations in this Second Amended Complaint detail why the charges were improperly charged to Plaintiffs and the classes. These overcharges are incidents of damages and injury related to (or in, or under, state law and RESPA) all of the 36 jurisdictions listed below. The named Plaintiffs thus have standing to assert claims on behalf of the members of the classes (which class members have all been injured and have standing to sue in this class action, participate in it, or otherwise be represented in it).

### [Class Action Allegations]

5.     The named plaintiffs maintain this action on behalf of themselves and the following class and subclass ("classes"):

<u>General Class not limited to federally-related mortgage loans:</u>

Everyone who was charged by Nationstar Mortgage LLC or Mr. Cooper (or any predecessor, successor, nominee, or agent of either) any "Third Party Reconveyance Preparation Fee," "Third Party Reconveyance/Release Preparation Fee," or similar fee, in relation to any mortgage or mortgages recorded within any of the following 36 jurisdictions (jurisdictions that require lenders to release satisfied mortgages and do not provide for the charging of other than actual government fees): Alabama,

3

Arizona, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas*, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. (* Texas does not have a law about mortgage releases but also does not have one allowing fees for releases.)

<u>RESPA Subclass (same as above except limited to federally-related mortgage loans):</u>

Everyone who was charged by Nationstar Mortgage LLC or Mr. Cooper (or any predecessor, successor, nominee, or agent of either) any "Third Party Reconveyance Preparation Fee," "Third Party Reconveyance/Release Preparation Fee," or similar fee, in relation to any mortgage or mortgages recorded in connection with any "federally related mortgage loan" as defined in 12 C.F.R. §1024.5(a) but excluding what are detailed as exceptions in 12 C.F.R. § 1024.5(b) and § 1024.5(d)—all of which text is incorporated herein—with terms that require the borrower to make payments to the servicer of the loan for deposit into an escrow account for charges with respect to the property, and did not return those charges to the borrower within 20 business days or credit them to a similar account for a new mortgage loan to the borrower with the same lender—in relation to any mortgage or mortgages recorded within any of the following 36 jurisdictions (jurisdictions that require lenders to release satisfied mortgages and do not allow or provide for the charging of other than actual government fees): Alabama, Arizona, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas*, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. (* Texas does not have a law about mortgage releases but also does not have one allowing fees for releases.)

4

6.      This Court should certify this as a class action including the
above classes and class members in part because:

- There are so many people in the General Class (alleged by
defendant in ¶15 of its Notice of Removal to be more than 100—and
indicated in Exhibit 5 of its Notice of Removal to be at least
787,935) that joinder of all class members is impracticable.  There
are so many people in the RESPA Subclass (also expected to be at
least 787,935) that joinder of all class members is impracticable.

- There are questions of law or fact common to the classes (see
detailed listing in ¶ 7 below).

- The named plaintiffs' claims are typical of the classes'.

- The named plaintiffs will fairly and adequately protect the classes'
interests.  They have no interests antagonistic to or in conflict with
those of the classes and are represented by counsel experienced and
competent in class actions.  The named plaintiffs have common
interests with unnamed members of the classes, and these
representatives will vigorously prosecute the interests of the classes
through qualified counsel.

- Fed. R. Civ. P. 23(b)(3): Questions of law or fact common to the
classes predominate over any questions affecting only individual
members, and a class action is superior to other available methods
for the fair and efficient adjudication of the controversy, for reasons

5

including:

(a) joinder of all members is impracticable,

(b) this case has the same common questions for all class members (see, for example, listing in ¶ 7 below), and

(c) most class members can only get relatively small relief—making it unlikely they can effectively prosecute individual cases themselves.

7.     Questions of law and fact common to the members of the classes—which predominate over any questions affecting only individual members—include, for example:

- Did Nationstar wrongfully deduct third-party-release-preparation fees from class members' escrow accounts, and can it keep these?

- Did Nationstar as contracting party (mortgagee) or successor, assignee, or agent of contracting mortgagees (including as escrow agent for mortgagees and the classes (mortgagors)) breach class members' mortgages by charging them (through their escrow accounts) third-party-release-preparation fees where nothing in mortgages or Applicable Law (defined as being all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions) allowed for the charging of these fees?

- Was Nationstar a contracting party (mortgagee) or successor, assignee, or agent of contracting mortgagees (including as escrow agent for mortgagees and the classes (mortgagors)), and if not, can it keep the money it took from class members for third-party-release-preparation fees where nothing in mortgages or Applicable Law (as defined above) allowed for the charging of these fees?

- Did Applicable Law (as defined above) and fiduciary duties

6

undertaken by Nationstar as escrow agent require Nationstar to give class members accurate statements of their total outstanding balances needed to be paid in full, and did Nationstar breach Applicable Law (as defined above) and fiduciary duties by charging third-party-release-preparation fees to class members' escrow accounts or otherwise charging them the fees?

• Did Nationstar violate RESPA by charging third-party-release-preparation fees to the escrow accounts of members of the RESPA Subclass instead of refunding those charges to the class members?

**[Multi-state class certification is proper here.]**

8.    Class certification covering class members in all of the 36 listed jurisdictions is proper.  The classes should be certified to include people in all of the 36 listed jurisdictions.  "Nothing in Rule 23 limits the geographical scope of a class action, and a nationwide class is not inconsistent 'with principles of equity jurisprudence, since the scope of . . . relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class.' " (Nationwide class certified.)  *Kuenz v. Goodyear Tire and Rubber Co.*, 104 F.R.D. 474, 476 (E.D. Mo. 1985) (denying motion for reconsideration of class certification in *Kuenz v. Goodyear Tire & Rubber Co.*, 617 F. Supp. 11 (N.D. Ohio 1985)), quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

9.    One theory of recovery here is 12 U.S.C. § 2605(g) (part of the Real Estate Settlement Procedures Act (RESPA)) and RESPA's Regulation X, 12 C.F.R. § 1024.34(b) which required Nationstar to refund its wrongful charges taken from Plaintiffs' and the classes' escrow accounts.  12 U.S.C. §

2605(f)(2)(A) provides for classwide recovery of "any actual damages to each of the borrowers in the class as a result of" Nationstar's violations of § 2605. 36-jurisdiction class certification is proper here arising out of RESPA but also out of common law breach-of-contract and other theories. *See*:

- *Edwards v. First American Corp.*, 798 F.3d 1172, 1185 (9th Cir. 2015) (reversing denial of motion to certify nationwide class for RESPA violations, of "all home buyers who entered into a federally-related mortgage transaction using [certain] title agencies").

- *Robinson v. Nationstar Mortgage LLC*, No. TDC-14-3667, 2019 WL 4261696, at *21 (D. Md. Sep. 9, 2019) (certifying nationwide class for RESPA violations).

- *McNamee v. Nationstar Mortgage, LLC*, No. 2:14-CV-1948, 2018 WL 1557244 (S.D. Ohio Mar. 30, 2018) (certifying two nationwide classes for bankruptcy discharge violations).

- *In re Revco Securities Lit.*, 142 F.R.D. 659 (N.D. Ohio 1992) (certifying nationwide class with state-law claims and doubting at p. 666 that differences in state law "are so great as to preclude class treatment.").

- *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n. 8 (1995) ("Contract law is not at its core 'diverse, nonuniform, and confusing,' *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 529 (1992) (plurality opinion).").

- *Mortimer v. FDIC*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) (nationwide class certification proper: "Since this case involves the use of form [mortgage] contracts, it is particularly appropriate to use the class action procedure." (Citations omitted.)); *id.* at 436 ("Addressing [the main breach-of-contract issue here] is not going to plunge the Court into a fifty state analysis of contract interpretation like the defendants so fervently contend.").

- *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997) ("[S]tate law does not need to be universal in order to justify nationwide class certification.").

- *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612–13 (D.S.D. 2004) certifying a nationwide class based on unjust enrichment:

> In looking at claims for unjust enrichment, we must keep
> in mind that the very nature of such claims requires a focus
> on the gains of the defendants, not the losses of the
> plaintiffs.  That is a universal thread throughout all
> common law causes of action for unjust enrichment . . . .
> The claims for unjust enrichment should also be certified.

10.     Even if there were relevant and material variations in state law, this could be managed by sub-classing and is not reason to deny nationwide class certification.  "Federal Rule of Civil Procedure 23(c)(5) states that '[w]hen appropriate a class action may be divided into subclasses that are each treated as a class under this rule.' " *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3rd Cir. 2009).  Courts should grant "certification of nationwide (b)(3) litigation classes where 'the laws of 50 states could be reduced to [several] general patterns, providing the framework for sub-classes if the nationwide actions had proven unmanageable.' " *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302 (3d Cir. 2011) quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817–18 (3d Cir. 1995). *See also In re Revco Securities Lit.*, 142 F.R.D. at 666 (mentioning subclassing); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 76–78 (E.D.N.Y. 2004) (46-state class proper "for the simple breach of a standard form contract" because there are no "insuperable obstacles" because states could be grouped into four categories based on varying contract interpretation laws—if there is even any relevant ambiguity to begin with).

11.     In class certification briefing, Plaintiffs' counsel will supply charts showing that the laws implicated in this case are substantially the same among the 36 jurisdictions, and—as to mortgage release laws—that these 36 jurisdictions require lenders or mortgage holders to prepare mortgage releases, and do not (like some other states) permit the charging of fees for doing so.

12.     Class certification covering all 36 jurisdictions is proper, and the named Plaintiffs have standing to represent all of the class members, as provided by Rule 23 and other law, and because *Lyngaas v. Curaden AG*, 992 F.3d 412, 432–38 (6th Cir. 2021) held that district courts have jurisdiction over nonresident class members, and personal jurisdiction as to each of their claims; and jurisdiction over the defendant as to class members outside the district court's state; and once certified, the class as a whole is the litigating entity, thus district courts can exercise personal jurisdiction over out-of-state defendants in nationwide class actions; no contacts in the specific-jurisdiction sense are required between absent class members and the forum; and "the only 'suit' before the court is the one brought by the named plaintiff.  Thus the court need analyze only the claims raised by the named plaintiff, who in turn represents the absent class members . . . ." *Id.* at 435 (Supreme Court citations and quote omitted). *See also Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293 (D.C. Cir. 2020) (nationwide class proper even where defendant was sued in the District of Columbia but like Nationstar in this

10

case incorporated in Delaware with its principal place of business in Texas).

*See also Nelson v. Forest River, Inc.*, No. CV-22-49-BMM, 2023 WL 2610769

(D. Montana Mar. 23, 2023) at *7.

### [Some of the events that entitle Plaintiffs and the classes to damages, other recovery and relief]

13.     The named Plaintiffs were charged by Nationstar Mortgage LLC

or Mr. Cooper (which was their servicer and escrow agent) "Third Party

Reconveyance Preparation Fees," "Third Party Reconveyance/Release

Preparation Fees," or similar fees (referred to below as "Release Preparation

Fees") in relation to mortgages recorded within Ohio: Mary Washington in

2019 (loan number 0621429539) and Peola Warren in 2019 (loan number

0610762528) and 2020 (loan number 0417247780).  Their mortgages were

each in connection with a "federally related mortgage loan" (as defined

above)—with terms that required them to make payments to the servicer of

the loan for deposit into an escrow account.  Defendant was their servicer and

the escrow agent of their escrow accounts.

14.     The named Plaintiffs and the members of the classes were

improperly charged Release Preparation Fees, in relation to mortgages

recorded within the following 36 jurisdictions (jurisdictions that require

lenders to release satisfied mortgages and do not provide for the charging of

other than actual government recording fees): Alabama, Arizona, Arkansas,

Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois,

Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas*, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. (* Texas does not have a law about mortgage releases but also does not have one allowing fees for releases.)

15.    Immediately or soon after Plaintiffs and the classes satisfied their mortgages, Defendant as mortgagee or agent-servicer of mortgagees wrongly charged them through their escrow accounts or otherwise Release Preparation Fees which purportedly were to pay "for expenses related to releasing [mortgages]."

16.    The Release Preparation Fees charged by Defendant were not government recording fees, and government fees charged by Defendant are not in dispute there.

17.    Plaintiffs' and the classes' mortgages were standard written contracts saying in part (emphasis added):

> Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered **and the charging of the fee is permitted under Applicable Law**.

> 'Applicable Law' means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

18.     Applicable Law (as defined above) only allowed Defendant to charge Plaintiffs and the classes for actual government recording fees and not things like Release Preparation Fees.

19.     The Release Preparation Fees charged by Defendant were not "for releasing [Security Instruments]" but instead purportedly for their preparation.

20.     The Release Preparation Fees charged by Defendant were not "permitted under Applicable Law" which "Applicable Law" was "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

21.     Even if the fees were paid to a third party for services rendered for releasing the mortgage, the charging of the fees also had to be permitted under Applicable Law (as defined above).  But the fees were not "permitted under Applicable Law" and thus were not allowed to be charged, even if "paid to a third party for services rendered."  (This is why some jurisdictions other than the 36 jurisdictions covered here are excluded: their statutes permitted the charging of Release Preparation Fees.)  The 36 jurisdictions here did not "permit" the fees.

22.     Defendant prepares many satisfactions in-house and does not charge a Release Preparation Fee for those.  It is not known how Defendant decided whether or not to outsource preparation but this might have been

done where Defendant did not own the loan.  In an earlier action filed by a Mr. Kushner, voluntarily dismissed by him in the Cuyahoga County Court of Common Pleas after remand, it was quickly confirmed that Defendant did not charge him a Release Preparation Fee, and his other allegation about late releases was not a viable claim to pursue.

23.     The issue here is whether the fees were "permitted under Applicable Law"—not whether they were "not prohibited by law."  Plaintiffs need not "clarify how the fees were prohibited by law" and instead it is Defendant's burden to show that the fees were "permitted under Applicable Law."

24.     It is not required to identify any provision or specific prohibitions of the alleged wrongful fees; rather, it is the absence of a provision expressly authorizing them.  For example, "*If state law expressly permits service charges*, a service charge may be imposed even if the contract is silent on the matter; *If state law expressly prohibits service charges*, a service charge cannot be imposed even if the contract allows it; *[but if] state law neither affirmatively permits nor expressly prohibits service charges*, a service charge can be imposed only if the customer expressly agrees to it in the contract."  *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) ($20 service charges violated FDCPA).

25.     The word "permitted" requires that Defendant identify state statutes that "permit"—*i.e.* expressly permit the fees or charges in question.

Defendant cannot do so because the fees are not expressly permitted by relevant state law, let alone RESPA.

26.    This is also an affirmative defense for Defendant to plead and prove.  Defendant can cite no law that "permitted" it to charge Plaintiffs and the classes Release Preparation Fees.

27.    The 36 jurisdictions at issue here require and required lenders to release satisfied mortgages, and do not and did not provide for the charging of other than actual government recording fees for releasing Security Instruments.  Nothing "permits" the charging of fees purportedly for the preparation (third party or not) of mortgage releases (and although Texas does not have a law about mortgage releases it also does not have one allowing fees for releases).  Thus Applicable Law (as defined above) does not and did not "permit" Defendant to charge Release Preparation Fees to Plaintiffs and the classes.

### [RESPA: Nationstar must refund the fees it should not have charged.]

28.    12 U.S.C. § 2605(f)(2)(A) provides for classwide recovery of "any actual damages to each of the borrowers in the class as a result of the" servicer's violations of § 2605.

29.    Defendant is and has always been a servicer of federally related mortgage loans (as defined above); Defendant's primary business activity is and was the collection of debts and administration of mortgage loan accounts

(in connection with federally related mortgage loans—including managing borrower escrow accounts, including for the collection and timely payment of mortgage payments due, property taxes and hazard insurance, and processing of loan payoffs and preparation and recording of mortgage releases.  Defendant often prepares mortgage release forms in-house and does not charge mortgagors for this.  It is not known why Defendant decided to outsource preparation of Plaintiffs' and the classes' releases.

30.     Plaintiffs and the classes had been granted "federally related mortgage loans" (as defined above) by lenders.

31.     As a condition of obtaining mortgage loans, lenders required Plaintiffs and the classes to maintain escrow accounts for things like the collection and payment of mortgage payments due, property taxes and hazard insurance, and processing of loan payoffs and preparation and recording of mortgage satisfaction forms.

32.     Plaintiffs and the classes agreed in writing to the terms of their loans and made payments of such things as principal, interest, property taxes, and insurance to Defendant (Defendant had become their mortgage servicer through initial actions, loan transfers, and so forth).

33.     Upon assuming or taking over servicing of Plaintiffs' and the classes' loans, Defendant assumed or took over responsibility for maintaining Plaintiffs' and the classes' escrow accounts.

34.     At times relevant to Defendant's servicing of Plaintiffs' and the

classes' loans, Plaintiffs and the classes made required payments to Defendant of such things as principal, interest, property taxes, and insurance.

35.     As a mortgage servicer of federally related mortgage loans (as defined above), Defendant is and was subject to the provisions of RESPA, at least with respect to Plaintiffs' and the classes' loans and mortgages.

36.     Under 12 U.S.C. § 2605(g) and related Regulations, Defendant is and was charged with responsibility for making correct, required, and timely payments from Plaintiffs' and the classes' mortgage loan escrow accounts.

37.     Because of Defendant's failure to properly maintain Plaintiffs' and the classes' escrow accounts (because Defendant improperly made charges for Release Preparation Fees to those accounts and improperly paid these monies to itself or improperly paid them out for fees that Defendant itself should have paid from its own funds, for its own obligations), Plaintiffs and the classes sustained actual damages and costs under RESPA and otherwise, as a result of failures to comply with RESPA, including being improperly charged Release Preparation Fees by Defendant.

38.     Servicers including Defendant are and were required to comply with requirements concerning the treatment of escrow funds.

39.     Servicers including Defendant are and were required to refund any escrow account balance after the borrower pays and paid the mortgage loan in full.  12 U.S.C. § 2605(g) requires that,

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such [charges] in a timely manner as such payments become due.  Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

See also 12 C.F.R. § 1024.34(b):

(1) … Except as provided [in (2) below], within 20 days … of a borrower's payment of a mortgage loan in full, a servicer shall return to the borrower any amounts remaining in an escrow account that is within the servicer's control.
(2) …  [I]f the borrower agrees, a servicer may credit any amounts remaining in an escrow account … to an escrow account for a new mortgage loan ….

See also 12 U.S.C. § 2605(k):

(1) IN GENERAL A servicer of a federally related mortgage shall not—
(E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

40.     All funds paid to Defendant or any of its agents, banks, etc. by Plaintiffs and the classes were required to be deposited into Plaintiffs' and the classes' escrow accounts.

41.     The terms of Plaintiffs' and the classes' federally related mortgage loans required Plaintiffs and the classes only to make payments to Defendant for deposit into their escrow accounts for the purpose of assuring

payment of taxes, insurance premiums, and other charges (which did not include Release Preparation Fees) with respect to the property, and Defendant should only have made payments from Plaintiffs' and the classes' escrow accounts for such taxes, insurance premiums, and other charges (not including Release Preparation Fees) in a timely manner as such payments became due (payments for Release Preparation Fees never "became due"). The payments of Release Preparation Fees into such accounts (or otherwise paid to Defendant or its banks or agents) became balances in such accounts that were within Defendant's control at the time the loans were paid off and therefore were required to be promptly returned to the borrowers or credited to a similar account for a new mortgage loan to the borrower with the same lender.

42.    Defendant did not return to Plaintiffs and the classes the payments of Release Preparation Fees into such accounts or that otherwise were paid to Defendant or its banks or agents.

43.    When Defendant received from Plaintiffs and the classes the payoff amounts that included charges for Release Preparation Fees, the mortgage loans were paid in full, and, in addition, had credit balances in the amounts of the charges for Release Preparation Fees included in the credit balances, and Plaintiffs and the classes had these amounts remaining in their escrow accounts that were within Defendant's control, in the amounts of the charges for Release Preparation Fees.  Defendant then used its control of

19

these amounts and transferred them to its own accounts or otherwise to itself or to its own benefit.  Defendant did not refund these escrow account balances to Plaintiffs and the classes, or otherwise credit them as required by law. Instead, Defendant improperly paid these balances to itself or paid them out for its own benefit (or used them to reduce its own expenses it otherwise incurred).

44.    These balances existed in the escrow accounts at and immediately after the mortgages were satisfied.  They did not have to remain in the escrow accounts to be required to be refunded—they only had to exist in the accounts at the time of a borrower's payment of a mortgage loan in full, otherwise an absurd result would be that any servicer could pay out to itself all escrow account balances (taking the balances for itself or otherwise using them to its own benefit) and thereby avoid ever having to return to borrowers any amounts (because after improperly taking the balances, there would be nothing "remaining in an escrow account").

45.     RESPA is a remedial statute.  See *Geoffrion v. Nationstar Mortg., LLC*, 182 F. Supp. 3d 648, 664–65 (E.D. Tex. 2016) (collecting cases). Under "traditional canons of statutory interpretation, remedial statutes should be construed broadly to extend coverage and their exclusions or exceptions should be construed narrowly."  *Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 559 (6th Cir. 2006).  "RESPA's principal purpose is "to protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process," both in the actual settlement process **and in the "servicing" of a federally related mortgage loan**." *Bordoni v. Chase Home Finance LLC*, 374 F. Supp. 3d 378, 383 (E.D. Pa. 2019) (emphasis added) quoting *Jones v. Select Portfolio Servicing, Inc.*, 2008 WL 1820935, at *9 (E.D. Pa. Apr. 22, 2008).  *See also Shepherd v. Incoal, Inc.*, 915 F.3d 392, 402 (6th Cir. 2019) observing " '[t]his court has often repeated that . . . remedial legislation [] should be liberally construed so as to include the largest number of [claimants] within its entitlement provisions.' " (quoting *Adams v. Dir., Office of Workers' Comp. Programs*, 886 F.2d 818, 825 (6th Cir. 1989) (citations omitted)).  *See also Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968) (addressing antitrust laws, "We have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes."), overruled on other grounds, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

21

46.     Any argument that a servicer need not refund a credit balance that was in an escrow account at or after the payoff because the servicer improperly took the credit balance for itself or used it to pay an overhead expense the servicer should have paid itself (and possibly charged instead to the mortgage owner/holder/lender) because it is no longer in the account (because the servicer improperly took it), conflicts with the remedial purposes of RESPA and the requirements of 12 U.S.C. § 2605(g) that, "Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower . . . ."

47.     Defendant also failed to provide accurate payoff balance amounts upon Plaintiffs' and the classes' requests, as required by 12 CFR 1026.36(c)(3):

> Payoff statements.  In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. . . .

48.     Defendant did not provide accurate statements of the total outstanding balances that would be required to pay Plaintiffs' and the classes' obligations in full as of a specified date but instead improperly added Release Preparation Fees to such balances, and Plaintiffs and the classes were injured by paying these inaccurate payoff amounts inflated by the improper

Release Preparation Fees, which were kept by Defendant to its own benefit.

49.     In addition to having a duty to collect, manage, and disburse funds from Plaintiffs' and the classes' mortgage loan escrow accounts, Defendant was charged by RESPA with the duty of reporting to Plaintiffs and the classes on at least an annual basis all activity in their mortgage loan escrow accounts.

### [Breach of Fiduciary Duty]

50.     Defendant owed Plaintiffs and the classes a fiduciary duty not to charge them or their accounts Release Preparation Fees.  Although generally parties to a mortgage are not fiduciaries based on that contractual relation only (borrower / lender-mortgagee) escrow accounts are *in addition to* the mortgagor-mortgagee relationship, and confer a fiduciary-like duty upon Defendant.  *See Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 883 (N.D. Ill. 1999) which held that a related escrow account may create a fiduciary-like duty.  See also *Reda v. Nationstar Mortgage, LLC*, No. 20 C 2010, 2020 WL 7353410, at *3 (N.D. Ill. Dec. 15, 2020).  An "escrow has been described as a 'trustee' for both the party making the deposit and the third party for whose benefit it is made . . . ."  *See Choi*, 63 F. Supp.2d at 887 (quoting *Toro Petroleum Corp. v. Newell*, 33 Ill. App. 3d 223, 228 (5th Dist. 1974).  The status of escrow agent creates fiduciary duties of trustee.  See *Choi*, 63 F. Supp.2d at 887; *Poindexter v. Nat'l Mortgage Co.*, 1995 WL 242287 at *4 (N.D. Ill. 1995).

51.     Applicable Law (defined above) and fiduciary duties undertaken by Defendant (including as escrow agent) required Defendant to give Plaintiffs and the classes accurate statements of their total outstanding balances required by Applicable Law to pay their obligations in full; Defendant's charges for Release Preparation Fees were breaches of Applicable Law (as defined above) and those duties; and Defendant cannot retain the benefits of its wrongdoing and must pay back to the class these breach-of-contract and fiduciary duty (including as escrow agent) overcharges.

52.     Defendant placed itself in a position of trust and confidence in regard to the accurate collection and payment of fees related to Plaintiffs' and the classes' loans and mortgages.

53.     Defendant as escrow agent engaged in the collection, management and disbursement of payments from Plaintiffs' and the classes' mortgage loan escrow accounts (and Defendant was the escrow agent).

54.     A fiduciary duty to Plaintiffs and the classes arose from Defendant's escrow agent status; Defendant failed to observe that duty (instead, it improperly charged Plaintiffs, the classes, and/or their escrow accounts the improper Release Preparation Fees, which it improperly paid to itself or for its benefit, to its improper benefit, and to the injury of Plaintiffs and the classes, and Defendant improperly retains these monies or benefits which amounts it must refund to Plaintiffs and the classes.

24

55.     Plaintiffs and the classes do not know at this time (without discovery) if they had a mortgagor-mortgagee relationship with Defendant but believe Defendant improperly collected these fees as a servicer and not as beneficial owner of the mortgage debts (or as ultimate holder of the mortgage liens).  It is not clear, and it is expected that Defendant will deny, that "the parties here have a borrower-lender relationship" (and Defendant will deny and argue strenuously that they did not have any other contractual relationship).

56.     The fees charged were improper under the Plaintiffs' and the classes' mortgage documents (and under Applicable Law as defined above).

57.     Plaintiffs and the classes had ownership of all funds collected and managed by Defendant in connection with Plaintiffs' and the classes' escrow accounts.

58.     Defendant did not at any time own any of the funds it held in mortgage escrow accounts for Plaintiffs and the classes.

59.     Defendant owed Plaintiffs and the classes fiduciary duties of reasonable care and loyalty.

60.     When it took from Plaintiffs and the classes the Release Preparation Fees, Defendant violated the duty of reasonable care it owed to Plaintiff and the classes by charging them fees that were not required to be paid from Plaintiffs' and the classes' mortgage loan escrow account for proper disbursements (and otherwise were not required to be paid by them) and

using those funds to enhance Defendant's own revenues or reduce Defendant's own expenses.

61.     Defendant violated its duty of reasonable care by taking payments from Plaintiffs' and the classes' escrow accounts, or otherwise taking them, as Release Preparation Fees.

62.     Defendant violated its fiduciary duties by taking payments from Plaintiffs' and the classes' escrow accounts, or otherwise taking them, for Release Preparation Fees.

63.     Defendant's deductions or charges for Release Preparation Fees were a proximate cause of the damages Plaintiffs and the classes sustained (damages in the amounts of the overcharges).

64.     Plaintiffs and the classes were damaged by the Defendant's actions because they were overcharged monies from their escrow accounts or otherwise, and did not receive refunds in the amounts of the overcharges, and Plaintiffs and the classes are entitled to restitution of these overcharged or wrongfully charged amounts.

### [Other breach(es) of contract(s)]

65.     Defendant—as contracting party (mortgagee) or successor, assignee, or agent of contracting mortgagees—breached Plaintiffs' and the classes' written contracts by charging them Release Preparation Fees where nothing in the classes' mortgages or Applicable Law (as defined above) allowed for the charging of these fees.

66.     Defendant will argue it cannot be held liable for breach of contract because it was not a party to the mortgage and was acting as an agent of lenders, arguing that an agent is not liable for its principal's contractual obligations.

67.     Plaintiffs' and the classes' Mortgage Agreements provided that the right to collect Monthly Payments, along with other loan servicing obligations, could be transferred to a "Loan Servicer."  The servicing rights to Plaintiffs' Loans were eventually transferred to Defendant.

68.     As a loan servicer, Defendant was delegated the contractual responsibility for servicing the borrowers' loans, or there was an agency relationship between Defendant and the holders of the Plaintiffs' mortgages that involved the assignment or assumption by Defendant of those contractual rights or duties, thus giving Defendant contractual privity with Plaintiffs and the classes.

69.     Discovery of Defendant's Servicing Agreements will shed light on these issues.  It is expected these Agreements will show Defendant can be sued for breach-of-contract at least as an independent contractor, and will detail the duties and obligations affirmatively assumed and undertaken by Defendant as loan servicer for the Mortgages—including broadly authorizing Defendant, as servicer, to take such actions as needed to ensure the servicing and administration of the Mortgage Loans in accordance with the standards of an institution prudently servicing mortgage loans for its own account.

70.     Plaintiffs and the classes do not know at this time if they will be found to be parties to (and therefore in privity with Defendant) as to servicing contracts with loan/mortgage holders related to their mortgages being serviced by Defendant.

71.     It is not known at this time whether—where servicing rights to Plaintiffs' and the classes' loans were transferred to Defendant—any loan/mortgage contractual relationship existed between themselves and Defendant—a relationship that may be required to maintain a breach-of-contract claim, *i.e.*, for example, it is not known if Defendant as servicer might not legally be in contractual privity with debtors.

72.     Plaintiffs also assert a breach-of-contract claim under the alternative theory that privity otherwise can be imputed to Defendant.

73.     Defendant as loan servicer could have been acting as the agent of mortgagees and lenders, and in some other way also in privity of contract with Plaintiffs and the classes, or privity with mortgagees otherwise could be imputed to Defendant.

74.     Defendant otherwise was acting in privity of contract with Plaintiffs and the classes.

**[Resulting money-had-and-received (a common count)]**

75.     This is to make clear that this is pleaded in the alternative in the event an express contact does not cover the same subject-matter (and in the event claims for breach-of-express-contract are not found valid, and there

28

is no other adequate remedy at law).  As provided by Fed. R. Civ. P. 8, a party "may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

76.    Defendant will argue there is no express contract concerning the subject of the Plaintiffs' and classes' claims for relief.

77.    Defendant will argue it was only a servicer of loans and therefore not in contractual privity with Plaintiffs and the classes; or that it simply serviced the loans/notes and therefore was not in contractual privity with Plaintiffs and the classes, and otherwise that all breach-of-contract claims should be dismissed.

78.    Defendant will argue it cannot be held liable for breach-of-contract because a breach-of-contract claim is not cognizable against a mere servicer (and that a servicer is not in contractual privity with the borrower) unless perhaps Defendant was the owner of a loan and holder of the mortgage at all relevant times.

79.    Defendant will argue it was not a party to the Mortgages.

80.    Defendant will deny any express agreement between itself and any of the Plaintiffs.

81.    Defendant will move for rulings against Plaintiffs and the classes by claiming there is no express contract that provides Plaintiffs and

29

the classes with any way to obtain any recovery for Defendant's overcharges.

82. Defendant has received money which in equity and good conscience it ought to pay to Plaintiffs and the classes.

83. This is a common count (a general pleading in which the pleading party is seeking to recover money, without specifying the nature of the case). Common counts are claims of indebtedness alleged with other causes of action. Having a general cause of action in equity like money-had-and-received, permits the plaintiffs to recoup their money without losing the opportunity for recovery if a defendant prevails on a technicality. If a plaintiff pleads a cause of action for breach of contract, and the trier of fact cannot find the existence of a contract, there remains the possibility of prevailing under the common count. If the trier of fact finds that money was paid to the defendant, and it is not equitable for the defendant to keep the money, then there could be a finding in favor of the plaintiff for the common count of money-had-and-received.

**[Overcharges]**

84. "Overcharges" is another way of alleging "money-had-and-received." "If the money belongs to the payer and the payee can show no legal or equitable right to retain it he must refund it." *Firestone Tire & Rubber Co. v. Central Nat. Bank*, 159 Ohio St. 423 (1953) (money-had-and-received).

85. Defendant has improperly received money from overcharges from Plaintiffs and the classes. It is unjust for the defendant to not pay

30

Plaintiffs and the classes this money because it was an overpayment, or otherwise in equity and good conscience it should be paid back to Plaintiffs and the classes.

## [Constructive Trust]

86.    The "Third Party Reconveyance Preparation Fees," "Third Party Reconveyance/Release Preparation Fees," and similar fees paid to Defendant are held by Defendant as a trustee, fiduciary, or otherwise, and must be returned by Defendant to Plaintiffs and the classes.  To the extent these fees were not deposited by Defendant into Plaintiffs' and the classes' escrow accounts, and instead paid into other accounts controlled by Defendant, Defendant holds still those funds as trustee or fiduciary or otherwise and must pay them to Plaintiffs and the classes.

## [Conclusion]

87.    For the above reasons, Plaintiffs and the classes suffered concrete and particularized injuries (the money overcharges to their detriment and which they still do not have, and which Defendant retains), and the injuries are traceable to Defendant's actions (charging Plaintiffs' and the classes' or their accounts the improper fees); and this Court's ruling in favor of the Plaintiffs and the classes on the below requests for relief would likely redress their injuries.

**Plaintiffs request on behalf of themselves and the classes:**

1.      Certification of this case as a class action (with the above proposed class definitions) under Rule 23.

2.      Damages in the amounts of the overcharges, and a judgment that Defendant must pay them back to Plaintiffs and the classes; and for an accounting—and restitution and distribution to the class—of all overcharges, at Defendant's expense; and relief allowed under RESPA.

3.      Restitution for money-had-and-received and overcharges, in the amounts of those overcharges.

4.      Other restitution.

5.      Pre-judgment interest.

6.      Costs.

7.      Whatever further relief the Court decides, and if Defendant claims Plaintiffs are not seeking enough or not for expansive-enough classes and Defendant expressly wants to pay more (to be approved by the Court) to expanded classes, then judgment for more would be accepted, including for expanded classes.

*/s/ Brian Ruschel*
Brian Ruschel
Ohio Bar No. 46631
1701 E 12 St Apt 23B
Cleveland OH 44114
Telephone: (216) 621-3370
E-mail: bruschel@aol.com

Attorney for Plaintiffs

<u>Proof-of-Service</u>

This filing through the ECF system today will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF),
and sent today via U.S. Mail and/or email to any participants not registered
with the CM/ECF system (none).

*/s/ Brian Ruschel*
Brian Ruschel
Attorney for Plaintiffs*
